[Cite as *Thallman v. Thallman*, 2016-Ohio-992.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

ESTATE OF WAYNE THALLMAN, ET AL.,

    PLAINTIFFS-APPELLANTS,           CASE NO.  13-15-36

    v.

DANIEL H. THALLMAN, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Seneca County Common Pleas Court
Probate Division
Trial Court No. 20144004A

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   March 14, 2016

APPEARANCES:

    *John T. Barga* for Appellants

    *Zachary E. Fowler*  for Appellees

**SHAW, P.J.**

{¶1} Plaintiffs-appellants Estate of Wayne Thallman, Tiffani Reiter, Stephani Underwood, and Kimberli Wurts (collectively "appellants") bring this appeal from the September 23, 2014 judgment of the Seneca County Common Pleas Court, Probate Division, denying appellants' motion to compel discovery filed against defendants-appellees Daniel Thallman, Martin Thallman, and Janet Quarrie (collectively "appellees"). In addition, appellants also appeal from the September 29, 2015 judgment awarding appellees attorney's fees and expenses pursuant to Civ.R. 37(A)(4) for appellees' successful defense of the motion to compel.

*Relevant Facts and Procedural History*

{¶2} On June 13, 2014, appellants filed a "Complaint for Accountings [of the] Claudine A. Thallman Trust [and the] Herval L. Thallman Trust." (Doc. No. 1). Claudine Thallman and Herval Thallman were married and had five children together: Martin Thallman, Daniel Thallman, Janet Quarrie, Wayne Thallman and James Thallman. In 1981, Claudine Thallman executed a "trust agreement." The trust agreement indicated that upon Claudine's death the trust would provide for Herval during his lifetime, and upon Herval's death, the trust would terminate and all properties would be paid over to Claudine and Herval's five children "and any afterborn children, share and share alike, per stirpes." (*Id*. at Ex. 1). On or about March 2, 1983, Claudine died and she was survived by Herval.

{¶3} On February 9, 2004, Herval Thallman created a trust that would benefit him during his lifetime and upon his death the trust would terminate and all trust properties would be paid over to Herval's children. The trust indicated that four of Herval's children would each receive a 1/5th share of the trust upon termination. The fifth child, James Thallman, predeceased Herval, so Herval indicated that the remaining 1/5th share of Herval's trust, which would have been James's share, would go to three of James's children, who are three of the appellants in this case, namely, Stephani Underwood, Kimberli Thallman (nka Wurts), and Tiffani Thallman (nka Reiter).[1]

{¶4} The primary asset of the Claudine Thallman and Herval Thallman trusts was farmland in Bloom Township, Seneca County, Ohio.

{¶5} On or about August 24, 2011, appellees began serving as trustees of both Herval and Claudine's trusts and they continued to serve in that capacity as trustees until Herval died in January of 2014.

{¶6} On June 13, 2014, appellants brought this action against the appellees seeking an accounting of both the Claudine Thallman and Herval Thallman Trusts. Amongst the relief sought by the appellants was for the appellees to provide a

---

[1] Thus upon the death of Herval Thallman and the termination of both trusts, appellants Underwood, Wurts, and Reiter were each entitled to a 1/15th distribution of the Herval Thallman trust assets, and a 1/25th distribution of the Claudine Thallman trust assets. The difference between the two distributions was that Claudine Thallman's trust did not specifically exclude James Thallman's two children from James's first marriage as distributes upon the termination of Claudine's trust whereas Herval's trust did specifically exclude James's two children from his first marriage, giving Underwood, Wurts, and Reiter a slightly greater share in the distribution of Herval's trust. Appellant Wayne Thallman, or his estate rather, is entitled to a 1/5th share of the distribution of both trusts.

"[r]eport of the Trust property, liabilities, receipts and disbursements including the source and amount of the Trustee's compensation and a listing of the Trust assets and their respective market values * * * for 2011, 2012, 2013, and 2014[.]" (Doc. No. 1).

{¶7} On July 10, 2014, appellees filed their answer and asserted a number of affirmative defenses. (Doc. No. 11).

{¶8} The case then proceeded to discovery. On July 24, 2014, the trial court held a case management conference concerning, *inter alia*, discovery. At that time appellees indicated to the trial court "that a packet of documents detailing the financial activities of the Trusts, since [Herval's'] death," had been provided to appellants' attorney. (Doc. No. 16).

{¶9} On July 25, 2014, appellees executed releases authorizing appellants to directly contact H&R Block to obtain the tax records of both trusts dating back to 2011.[2] In addition, appellees executed releases authorizing appellants to obtain "any/all information requested on accounts" owned by the trusts dating back to 2011 from First Merit Corporation, where the trusts' banking was done.

{¶10} On August 27, 2014, appellees filed a number of notices indicating that they had served their responses to appellants' interrogatories and appellants' request for production of documents. (Doc. Nos. 21-24).

---

[2] The releases were actually attached to documents later filed in the record. However, they were dated July 25, 2014, therefore we put them in their appropriate chronological context here.

{¶11} On August 29, 2014, appellees filed a "motion to dismiss for failure to state a claim and, in the alternative, motion for summary judgment." (Doc. No. 30). In the motion, appellees contended that the appellants made numerous requests for various documents both formally and informally and that appellees had provided the documents that they were "required to provide under law." (*Id*.) Appellees asserted that appellants filed their complaint for accounting in June of 2014, but were seeking an accounting of the trusts for the years 2011 through 2014. According to appellees, appellants were not even entitled to information from 2011-2014 under R.C. 5808.13 because appellants were not "current beneficiaries" of the trusts during those years. (*Id*.) The relevant statute referred to by appellees to support their position, R.C. 5808.13, reads, in pertinent part,

> **(C) A trustee of a trust that has a fiscal year ending on or after January 1, 2007, shall send to the current beneficiaries, and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values. * * ***

{¶12} Appellees also contended that regardless of whether they were required to provide information to appellants under statute, they had "provided voluminous documents to [appellants] to satisfy [R.C. 5808.13]" and that they had provided releases and authorization for appellants to obtain any other pertinent documentation. (Doc. No. 52).

{¶13} On September 8, 2014, another pretrial conference was held. At the hearing the trial court indicated that it heard from the parties regarding the status of discovery. (Doc. No. 38). The trial court then filed a judgment entry instituting a briefing schedule for appellants to file a motion to compel and also for appellants to file a response to appellees' "motion to dismiss/motion for summary judgment." (*Id.*)

{¶14} On September 10, 2014, appellants filed a "motion to compel discovery." In the motion the appellants sought to compel appellees to provide more thorough answers to interrogatories and to provide more financial documentation, particularly as it related to the appellees' administration of the trusts from when appellees became trustees in 2011 to the death of Herval Thallman in 2014. The motion and accompanying memorandum consisted of approximately 14 pages and it contained 18 exhibits totaling in excess of 130 pages of material ranging from copies of checks, to hand-written notes and email correspondence. (Doc. No. 37).

{¶15} On September 12, 2014, appellants filed a supplement to their motion to compel, arguing that R.C. 5808.13 applied not only to current beneficiaries but also to "other beneficiaries" who request information. (Doc. No. 39). Appellants argued that the statutory definitions of "other beneficiaries" included them even prior to Herval's death, and that they were therefore entitled to more information. (Doc. No. 39).

{¶16} On September 17, 2014, appellees filed their response to appellants' motion to compel, seeking for the trial court to deny the motion. Appellants contended that they had provided all documents in their possession and, in the alternative, that appellees were not entitled to the documentation regardless. In addition, appellees requested that the trial court order appellants to pay the reasonable expenses and attorney's fees incurred as a result of defending the motion to compel as provided in Civ.R. 37(A)(4).

{¶17} Also on September 17, 2014, appellees filed a motion to strike appellants' motion to compel and the supplement to that motion, pursuant to Civ.R. 11. Appellees contended that the motion to compel "was not properly supported on good ground." (Doc. No. 41). In addition, appellees filed a motion for a protective order seeking that discovery be limited to the trust property, activity, and documentation since Herval's death on January 14, 2014. (Doc. No. 42).

{¶18} On September 19, 2014, appellants filed a brief in opposition to appellees' motion to strike and motion for a protective order. (Doc. No. 43).

{¶19} On September 22, 2014, appellants filed a brief in opposition to appellees' motion to dismiss and for summary judgment in the alternative. (Doc. No. 45).

{¶20} On September 23, 2014, the trial court filed its judgment entry determining appellants' motion to compel discovery. In the judgment entry, the

trial court summarized the arguments of the parties and made factual findings, indicating that appellants

> **do not contend any failure to respond to Discovery but rather seek an Order requiring supplementation of prior responses. The [appellees] have stated that they have provided all the relevant documents in their possession. [Appellees], without waving their objections to [appellants] discovery requests, executed a release and authorization in favor of [appellants] * * * allowing them to directly contact the bank and investment firm exclusively used by the Trusts.**

(Doc. No. 48).

{¶21} The trial court then specified that the primary issue to be determined for the motion to compel was "whether there is a right to demand records via Discovery that predate the date the [appellants] became beneficiaries." (Doc. No. 48). In analyzing the issue, the trial court stated that it was "undisputed" that the appellants did not become beneficiaries of the trusts until Herval's death on January 14, 2014, and that it was undisputed that appellants did not request information regarding the trusts until after Herval's death. The trial court stated that appellants "became 'current beneficiaries' of both trusts in January 2014, when Hervall Thallman died." (*Id*.) Based on this determination, the trial court stated that appellants were seeking "to require [appellees] to provide information through Interrogatory and Production of Documents outside of the date of responsibility as Trustees, that being January 14, 2014." (*Id*.)

**{¶22}** The trial court then continued by stating that there was no showing that appellees failed to provide supplemental discovery for any acts of the trustees since January 14, 2014, or that the requested subject matter was relevant to the litigation. Based on its analysis, the trial court denied appellants' motion to compel and granted appellees' protective order limiting discovery to trust documentation since January 14, 2014.

**{¶23}** On October 1, 2014, appellees filed for a motion for award of attorney's fees pursuant to Civ.R. 37(A)(4), which provides that the prevailing party in a motion to compel "shall" receive expenses and attorney's fees unless the court finds, after a hearing, that the motion to compel was substantially justified. (Doc. No. 49); Civ.R. 37(A)(4). Appellees indicated that at the time they filed for their award of attorney's fees they had incurred $3,452.50 defending the motion to compel.

**{¶24}** Also on October 1, 2014, appellants filed a motion for leave to file an amended complaint instanter, which alleged, in addition to the original allegations, that appellees breached their fiduciary duties, that appellees willfully, wantonly, and/or negligently breached the duties of fairness, loyalty, impartiality, and care owed to the appellees, and that appellees "maliciously interfered with [appellants'] expectancies of inheritance by mismanagement and conversion." (Doc. No. 50).

{¶25} On October 6, 2014, the trial court filed an entry indicating that it had held oral arguments on the pending dispositive motions on October 1, 2014.[3] The trial court stated that the parties also engaged in settlement discussions and that an agreement had been reached to stay all pending motions. (Doc. No. 51). The entry indicated that as part of the agreement, appellees were going to provide appellants with additional releases so appellants could further investigate appellees' actions related to the trusts. (*Id.*)

{¶26} On October 24, 2014, appellees filed a motion to strike appellants' motion for leave to file an amended complaint. (Doc. No. 52). Appellees argued that appellants were " 'fishing' for more information in an attempt to come up with possible causes of action where none exist." (*Id.*)

{¶27} Also on October 24, 2014, appellees filed a document purportedly summarizing the agreement that had been made on the record at the October 1, 2014 hearing. Appellees indicated that the agreement was that appellants would utilize the releases that had been provided by the appellees, including new releases that would be executed related to insurance policies from 2011-2014, to investigate on their own time, and that if the appellants did not find additional information indicating misconduct greater than $500 after a review of those documents, appellants would dismiss their action with prejudice. (Doc. No. 53).

---

[3] No transcript of this hearing was produced.

{¶28} Also on October 24, 2014, appellees filed a motion for judgment on the pleadings. (Doc. No. 54).

{¶29} On October 30, 2014, appellants filed an "omnibus" response to appellees' motions made on October 24, 2014. Appellants stated that appellees withdrew the discovery authority they granted to the appellees, that appellees improperly disclosed confidential discussions between counsel to the court, and that dismissal of the case was not appropriate. (Doc. No. 60).

{¶30} On October 30, 2014, appellants filed a voluntary "Notice of Dismissal" pursuant to Civil Rule 41(A)(1), dismissing the action against appellees in its entirety without prejudice. (Doc. No. 62).

{¶31} On November 3, 2014, the trial court filed a judgment entry acknowledging appellants' voluntary dismissal and stating that appellants' motion for award of attorney's fees pursuant to Civ.R. 37(A)(4) was still outstanding as a collateral matter. However, the trial court stated that appellants' voluntary dismissal rendered all other non-collateral matters moot. (Doc. No. 63).

{¶32} On November 13, 2014, appellants filed a response to appellees' motion for award of attorney's fees contending, *inter alia*, that the appellants' voluntary dismissal rendered the trial court without jurisdiction to consider the matter of sanctions and attorney's fees for discovery violations. (Doc. No. 64).

**{¶33}** On November 14, 2014, appellants filed a notice of appeal to this court, indicating that appellants wished to appeal the decision made by the trial court in the September 23, 2014, judgment entry.[4] (Doc. No. 67).

**{¶34}** On December 9, 2014, this Court dismissed appellants' first appeal. This Court stated that appellants had *voluntarily dismissed* all their claims in this action. The only outstanding issue was appellees' motion for attorney's fees. Thus this Court determined there was no timely appeal filed from any final judgment. Appellants subsequently filed for reconsideration of this Court's determination, and that reconsideration motion was also denied by this Court.

**{¶35}** On February 4, 2015, the trial court held a case management conference following this Court's dismissal of appellants' first appeal. At that conference, the judge presiding over the case indicated that his son and the son of one of appellees' attorneys were scheduled "to be playing on a 5th grade AAU basketball team together in the Spring of 2015 starting in March" and that both the judge and appellees' attorney had been asked to help coach the team. (Doc. No. 77). The trial court judge then recused himself due to the "potential future appearance of impropriety." (*Id.*) Common Pleas Court Judge Steven Shuff was then assigned to preside over the case.

**{¶36}** On April 16, 2015, the trial court held a hearing on the motion for attorney's fees and expenses filed pursuant to Civ.R. 37(A)(4). At the hearing

---

[4] Appellants also attempted to appeal another issue from a prior judgment entry not related to this appeal.

-12-

appellees called attorney James S. Nordholt, Jr., who was classified as an expert in attorney's fees in the relative area of Ohio. Nordholt gave testimony as to the fees incurred by the appellees, their reasonableness, and the reasonableness of the amount of time spent on what was prepared. Nordholt's testimony was not concluded by the end of the hearing so the hearing was continued to a second day, which was scheduled weeks later.

{¶37} Prior to the second day of the hearing on attorney's fees, appellees filed a supplement to their motion for award of attorney's fees contending that they had incurred additional fees at the prior hearing, making the total amount of fees and expenses that the appellees had incurred as a result of the motion to compel $9,875.75. In addition, appellees also argued for an award of sanctions against appellants pursuant to Civ.R. 11 and for a determination that appellants had engaged in frivolous conduct pursuant to R.C. 2323.51. Appellees argued that the trial court should determine that the case had been wholly frivolous. Appellees contended that the trial court should award appellees their attorney's fees in their entirety for this action, which amounted to over $30,000.

{¶38} On May 6, 2015, the hearing on attorney's fees resumed and Nordholt's testimony was concluded. The trial court allowed each side to present closing arguments and each side was also permitted to submit closing briefs related both to Civ.R. 37(A)(4) sanctions and the newly made frivolous conduct allegations. Both appellants and appellees filed closing briefs.

{¶39} On September 29, 2015, the trial court filed its final judgment entry on the matter. In its entry, the trial court determined that appellants did not meet their burden to establish that their motion to compel was substantially justified. Therefore the trial court awarded appellees attorney's fees and expenses in the amount of $9,875.75 for sanctions against appellants pursuant to Civ.R. 37(A)(4). The trial court reasoned similar to the original probate judge that appellants "did not become beneficiaries until the death of Herval Thallman, on January 14, 2014." (Doc. No. 89). Based on this, the trial court indicated that appellees had "no duty to provide information related to the trust * * * prior to that date." (*Id.*) The trial court also determined that appellees had readily produced relevant information and thus the motion to compel was not substantially justified. (*Id.*) Finally, the trial court determined that appellees did not timely file their request for frivolous conduct and Civ.R. 11 sanctions in this matter as they did not file the request within 30 days of appellants' voluntary dismissal.[5] Therefore appellees' request for sanctions on that later-filed motion requesting a finding of frivolous conduct and appellees' request for attorney's fees for the entire case on that basis, was overruled.

---

[5] We note that while R.C. 2323.51(B)(1) explicitly contains a thirty day time limit, Civ.R. 11 "sets forth no time frame for filing a motion for sanctions." *Bergman v. Genoa Banking Co.*, 6th Dist. Ottawa No. OT-14-019, 2015-Ohio-2797, ¶ 22. However, some courts have taken the position that a thirty day time limit should be "inferred for Civ.R. 11 sanctions[.]" *Zunshine v. Cott*, 10th Dist. No. 07AP-764, 2008-Ohio-2298, ¶ 21. Regardless, appellees did not file a cross-appeal on this issue and we will not further address it.

{¶40} Appellants now bring this appeal from the September 23, 2014 judgment denying their motion to compel, and the September 29, 2015 judgment awarding appellees attorney's fees pursuant to Civ.R. 37(A)(4). Appellants assert the following assignment of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT MISINTERPRETED THE FACTS, MISAPPLIED THE LAW, COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION WHEN IT DENIED THE PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND GRANTED DEFENDANTS' MOTION FOR PROTECTIVE ORDER.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT MISINTERPRETED THE FACTS, MISAPPLIED THE LAW, COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION WHEN IT AWARDED ATTORNEY FEES PURSUANT TO CIVIL RULE 37(A)(4).**

*First Assignment of Error*

{¶41} In appellants' first assignment of error they contend that the trial court erred by denying their motion to compel discovery and that it also erred by granting appellees' motion for a protective order. We find that appellants' arguments are rendered moot by their voluntary dismissal of their case.

{¶42} In this case appellants filed suit against the appellees, proceeded through discovery and eventually filed a motion to compel discovery. Appellants lost that motion to compel, and ultimately voluntarily dismissed their case against appellees without prejudice pursuant to Civ.R. 41(A). Appellants now ask this Court to reverse the decision on the motion to compel made by the trial court

where the case and issues are no longer pending due to the voluntary dismissal. Even if we agreed with the appellants—and, to be clear, we are not saying that we agree with appellants as we are not deciding the merits of the matter—there would be no remedy this Court could offer to the appellants because of their voluntary dismissal. Only the collateral matter of sanctions remained pending following appellants' voluntary dismissal.[6] Thus for these reasons appellants' first assignment of error is rendered moot and we will not further address it.[7]

*Second Assignment of Error*

{¶43} In appellants' second assignment of error, they argue that the trial court erred in awarding the appellees attorney's fees and expenses pursuant to Civ.R. 37(A)(4). Specifically, appellants contend that the trial court improperly relied on the previous judge's ruling in denying the motion to compel, that the

---

[6] We note that appellants repeatedly argued to the trial court, and they still maintain to this Court, that Civ.R. 37(A)(4) sanctions are not a collateral matter and thus the trial court should not have addressed the sanctions after appellants' voluntary dismissal of the underlying action. First, that is legally inaccurate. An award of Civ.R. 37(A)(4) attorney's fees and expenses is described as an award for sanctions. *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. Franklin No. 15AP-99, 2015-Ohio-3845, ¶ 53; *Wilkins v. Sha'ste Inc.*, 8th Dist. Cuyahoga No. 99167, 2013-Ohio-3527, ¶ 9. "A proceeding for sanctions is ancillary to the actions before the trial court." *Blackwell v. Allstate Ins. Co.*, 8th Dist. Cuyahoga No. 80485, 2003-Ohio-1823, ¶ 35; *see also ABN AMRO Mtge. Group, Inc. v. Evans*, 8th Dist. Cuyahoga No. 96120, 2011-Ohio-5654, ¶ 6 ("While a Civ.R. 41(A)(1) voluntary dismissal generally divests a court of jurisdiction, a court may still consider collateral issues not related to the merits of the action."); *State ex rel. Ahmed v. Costine*, 100 Ohio St.3d 36 (2003) ("[t]rial courts may consider collateral issues like * * * sanctions despite a dismissal[.]"); *In re GTI Capital Holdings, LLC,* 399 Fed.Appx. 236 (9th Cir.2010) (finding that proceedings under the equivalent Federal Rule of Civil Procedure, 37(A)(5), "are collateral because they aim to deter abuse of the judicial process and have no bearing, and therefore no res judicata effect, on the case's underlying merits."). Second, not only is appellants' interpretation legally inaccurate, but it would also lead to troubling results. Under appellants' interpretation, a litigant could commit any number of discovery violations but as long as they dismissed their case before a trial court awarded attorney's fees, the litigant would escape sanctions.

[7] We also note that appellees filed a motion to have appellants' appeal partially dismissed. That motion, which was related to appellants' first assignment of error, is rendered moot by our decision on this matter, and we will not further address it.

appellees did not provide sufficient expert testimony to justify the award of fees and expenses, that appellants were only complying with a court order when they filed their motion to compel, and that Civ.R. 37(A)(4) does not automatically entitle the prevailing party to be awarded attorney's fees.

{¶44} Pursuant to Civ.R. 37, a party may move a trial court to compel an uncooperative litigant to participate in discovery. Upon ruling on the motion to compel, the trial court is generally "required" to award reasonable expenses incurred, including attorney's fees, to the prevailing party, whichever party that may be. *Stratman v. Sutantio*, 10th Dist. Franklin No. 05AP-1260, 2006-Ohio-4712, ¶ 29. Civil Rule 37(A)(4) establishes that if a motion to compel is denied, attorney's fees are granted to the prevailing party unless the moving party establishes that its motion was substantially justified. The pertinent part of Civ.R. 37(A)(4) that is related to this action reads,

> **If the motion [to compel] is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.**

Civ.R. 37(A)(4).

{¶45} "The mandatory sanctions of Civ.R. 37(A)(4) [thus] grant a substantial right to the party against whom the discovery process has been

-17-

abused." *MaCarthy v. Dunfee*, 19 Ohio App.3d 68, 70, (9th Dist.1984). Notably, Civ.R. 37(A)(4) also places the burden on the party who lost the motion to compel to show that the motion was "substantially justified."

{¶46} When a trial court elects to impose financial sanctions, including those under Civ.R. 37(A)(4), we review the trial court's decision under an abuse of discretion standard. An abuse of discretion implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶47} We will separately discuss below the trial court's decision determining that appellants' motion to compel was not substantially justified for purposes of Civ.R. 37(A)(4), and the trial court's specific determination of the fees and expenses awarded in this case.

### I. Whether the trial court abused its discretion in determining that appellants' motion to compel was not substantially justified for purposes of Civ.R. 37(A)(4).

{¶48} In this case it was appellants' burden at the hearing on Civ.R. 37(A)(4) sanctions to demonstrate that their motion to compel was "substantially justified." The trial court determined that the appellants did not meet that burden. In its judgment entry on the matter, the trial court cited multiple reasons for determining that appellants' motion was not substantially justified. The trial court conducted the following analysis in reaching that conclusion after citing the relevant legal authority.

> **Plaintiffs did not become beneficiaries [of the trusts] until the death of Herval Thallman, on January 14, 2014.**
>
> **Further, Rule 26 of the Ohio Rules of Civil Procedure only allows discovery of *relevant* information. The Court has already found that it is undisputed that Plaintiffs did not make a request for information regarding the trusts at issue until after the death of Herval Thallman.**
>
> **Under the plain letter of the law, Defendants had no duty to provide information related to the trust to Plaintiffs prior to that date. Defendants had already properly responded to discovery. The motion to compel did not allege that Defendants had not properly responded to discovery, but rather, sought even more information. Plaintiffs' motion to compel sought supplements to that discovery, ultimately requesting an order to compel information to which they were not entitled, and which was not relevant to the facts at issue before the Court.**

(Doc. No. 89).

{¶49} The trial court thus set forth its primary reasons for finding that the appellants' motion was not substantially justified: appellants were simply not entitled to the supplemental information requested; notwithstanding whether appellees had any duty to provide the supplemental information, appellees had already properly responded to discovery; and the requested information was not relevant to the specific issue before the court.

{¶50} In reviewing the trial court's decision, we do not find that appellants have demonstrated through either factual or legal arguments that the trial court abused its discretion in this case. This action began with appellants filing a "Complaint for Accountings" of the Claudine Thallman and the Herval Thallman

trusts. The record indicates that appellees provided the appellants with copious amounts of information to establish a current accounting of the trusts after the death of Herval Thallman in January of 2014 when appellants were entitled to a distribution of the trust assets. In addition, the record indicates that the appellees provided the appellants with access to tax returns from the years 2011-2014 and access to the bank records from the institution that handled the trusts' banking and investing.

{¶51} Appellants contend that based on R.C. 5808.13(C), they were entitled to *more* information to satisfy the accounting, including information as to what had been in the trust in the years prior to Herval's death. Revised Code 5808.13(C) requires trustees to

> **send to the current beneficiaries, and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values.**

Notably R.C. 5808.13 does not specify what is required for a "report" of the trust property. However, the "official comment" R.C. 5808.13 sheds light on what is required for a "report" or an "accounting" by a trustee. It specifically indicates that

> **[the code] employs the term "report" instead of "accounting" in order to negate any inference that the report must be prepared in any particular format or with a high degree of formality. The reporting requirement might even be satisfied by providing the**

**beneficiaries with copies of the trust's income tax returns and monthly brokerage account statements if the information on those returns and statements is complete and sufficiently clear.**

Official Comment to R.C. 5808.13.[8] Based on what was required for a report, what was delivered in discovery, and the releases granted to the appellants, we cannot find that the trial court erred in determining that appellees had already complied with discovery and that additional information was irrelevant to a current report or "accounting" of the trusts.

{¶52} Moreover, the trial court's ruling that the additional information was irrelevant seems particularly true in light of the fact that appellants did not allege any type of fraud on behalf of the appellees in their complaint. The closest appellants came in their complaint to alleging any type of fraud was to allege that appellees did not act in good faith by failing to respond promptly to requests for information regarding the trusts.[9] Thus under these circumstances we cannot find that the trial court abused its discretion in finding that the relevant documents were provided and that additional documents—if they existed—were irrelevant to this action. For these reasons alone we find that the trial court did not abuse its discretion.

---

[8] We note that "[o]fficial comments are not enacted by the state legislature and do not have the effect of law, but they do provide courts with 'interpretive assistance.' " *In re Fields*, 351 B.R. 887, 892 (Bankr. S.D. Ohio 2006), quoting, *AGF, Inc. v. Great Lakes Heat Treating Co.,* 51 Ohio St.3d 177 (1990).

[9] While a review of the complaint makes clear that the appellants did not allege fraud, we would note that to any extent any of the allegations appellants did make could be liberally construed as touching on fraud, "fraud must be pled with particularity." *Messina v. Clawges*, 8th Dist. Cuyahoga No. 93323, 2010-Ohio-3311, ¶ 8. *See also* Civ.R. 9(B).

{¶53} We note that the trial court found another reason to deny appellants' motion to compel, which was that appellants were not entitled to the trusts' financial documents for years prior to 2014 because they were not "beneficiaries" at that time. The trial court specifically found that appellants "did not become beneficiaries until the death of Herval Thallman, on January 14, 2014." (Doc. No. 89). Appellants contend that pursuant to R.C. 5808.13(C) both "current beneficiaries" and "other beneficiaries" who request a report are entitled to them. Appellants argue that they fell into the category of "other beneficiaries" contrary to the trial court's conclusions.

{¶54} In analyzing the statutory definitions for "beneficiary," "current beneficiary," and "qualified beneficiary" under R.C. 5801.01, there appears to be a legitimate question as to just what status the appellants had prior to Herval Thallman's death. However, we do not need to reach a decision on this matter as even if we assumed that appellants met the statutory definition for "other beneficiaries" under R.C. 5808.13(C), the trial court's decision denying appellants' motion to compel was supported on other grounds as previously stated.

{¶55} Next, Appellants argue that the original trial court judge actually *ordered* them to file a motion to compel so the second trial court judge could not have found that the motion to compel was not substantially justified. Appellants contend they were merely complying with a court order in filing the motion to compel. Despite appellants' arguments, it appears from the record that the trial

court merely set a schedule following a case-management conference for the appellants to file a motion to compel if they chose to do so. The original trial judge explicitly stated as much in his judgment entry denying the motion to compel, stating that it had "issued a briefing schedule" related to the motion. (Doc. No. 48). Giving the appellants a deadline to file a motion to compel is vastly different than explicitly ordering the appellants to file a motion to compel. Thus appellants' argument is not well-taken.

{¶56} Appellants also contend that the second trial judge had "no personal knowledge of the matter" when he was assigned to the case upon the first trial judge's recusal and that the second judge merely reiterated the first judge's findings. However, the second trial judge's judgment entry on the matter affirmatively indicated that he reviewed the "record, exhibits, and arguments of counsel" and he also presided over both of the hearings on Civ.R. 37(A)(4) sanctions. Therefore appellants' argument on this issue is similarly not well-taken.

{¶57} For all of these reasons we find that appellants' arguments that the trial court erred in determining that their motion was not substantially justified are not well-taken.

**II. Whether the trial court's award of attorney's fees and expenses pursuant to Civ.R. 37(A)(4) was supported by the record**

{¶58} Appellants contend that even if the trial court properly found that their motion to compel was not substantially justified, the award for attorney's fees was improper. Appellants specifically contend that the attorney called by the appellees to establish the reasonableness of the fees did not adequately establish that the fees were reasonable, that he was not an "expert" in trust law, and that the trial court improperly limited appellants' cross examination of appellees' expert.

{¶59} At the April 16, 2015, and May 6, 2015, hearings, the appellees called a disinterested attorney, James S. Nordholdt, Jr., to testify as to attorney's fees in this case. Nordholdt testified that he had been an attorney for 41 years, that he was a general practitioner, and that he had also been a prosecutor and a public defender during his career. Nordholdt testified that he had been involved in probate proceedings in the past. After providing his qualifications and allowing appellants to cross-examine Nordholt regarding those qualifications, Nordholt was then recognized as an expert under Evid.R. 702(B) for purposes of attorney's fees in the locality. Notably, appellants *did not object* when the trial court recognized Nordholt as an expert, and contrary to appellants' arguments, Nordholt was not recognized as an expert in trust law.

{¶60} Nordholt went on to testify that he spent "approximately two hours with the court's file," and that he had "reviewed copies of motions." (Apr. 16, 2015, Tr. at 60). Nordholt testified that he "did not read the content of every motion" but he reviewed them "to get a sense of what was filed and what was

pertinent to litigation in this matter." (*Id.*) After reviewing the record, Nordholt testified that he was "satisfied" that he had "a general understanding of the litigation in this particular case." (*Id.*)

{¶61} Nordholt also testified that he reviewed appellees' attorney's fees related to the motion to compel. Nordholt testified that he "reviewed the invoices" along with appellees' attorney and actually deleted items on the bills that "pertain[ed] to general trust administration rather than litigation." (Apr. 16, 2015, Tr. at 61).

{¶62} Nordholt then testified as to the rates listed on the bills, indicating that they were reasonable and customary for the area, and that "[t]he work described appeared to be reasonable." (*Id.* at 88). During Nordholt's testimony, appellants actually stipulated that the hourly rates were reasonable. (*Id.* at 93).

{¶63} Nordholt testified that he did not specifically review the content of the motion to compel, but rather "was looking at there was a Motion to compel filed" and "whether or not the time spent to make that response and the action in responding was reasonable." (*Id.* at 90-91). Nordholt later specifically clarified that he thought that the number of hours expended was reasonable, but he was not offering any opinions as to the merits of the motion to compel or the response to it. (*Id.* at 95).

{¶64} Nordholt's testimony continued into the second day of the hearing on attorney's fees, which was held weeks later. At the second hearing, Nordholt gave

testimony regarding attorney's fees incurred from the first hearing on fees, and he testified that "the time spent on the described items appeared reasonable" and that "the hourly rates * * * [were] reasonable." (May 6, 2015, Tr. at 23). However, Nordholt testified that he specifically did not examine the $1,275 in expenses claimed by appellees so he had "no opinion regarding whether the expenses that [we]re listed there were reasonable or necessary." (*Id*. at 25). Exhibits detailing the hours worked and the fees charged were introduced into evidence. The exhibits indicated that the $1,275 in expenses was for travel and accommodation for one of the trustees flying to one of the hearings related to the motion to compel.

{¶65} After analyzing the matter in its judgment entry, the trial court ultimately awarded $8,600.75 in attorney's fees and expenses related to the motion to compel and $1,275.00 as "travel expenses as a result of the motion to compel" for a total award of $9,875.75. (Doc. No. 89).

{¶66} On appeal appellants contend that Nordholt's testimony was insufficient to establish the award of attorney's fees in this case. We disagree. Nordholt gave clear testimony as to what his role was, his review of the documents, and his opinion that the attorney's fees presented were reasonable, that the work was reasonable, and that the amount of time spent doing the work was reasonable. Based on this testimony the trial court had ample evidence before it to make the determination that the fees were reasonable and necessary. Therefore we

cannot find that the trial court abused its discretion related to the fees actually testified to by Nordholt.

{¶67} However, notwithstanding his testimony related to attorney's fees and expenses, Nordholt did not offer any testimony as to the reasonableness of the travel expenses asserted by the appellees, and, in fact, he specifically testified that he did not review the expenses and had no opinion regarding them. Thus while we cannot find that the trial court abused its discretion in finding that Nordholt's testimony was sufficient to support an award of the fees alleged, his testimony could not support an award for the $1,275 in travel expenses. As appellees provided no other testimony related to the travel expenses, we find that the trial court's award of travel expenses was error in this case.

{¶68} We note that appellants also contend that the trial court erred in limiting their cross-examination of Nordholt during his *voir dire* and during the cross-examination related to alleged frivolous conduct. However, appellants attempted to question Nordholt about things unrelated to his qualifications during his *voir dire*, so we cannot find that the trial court erred in excluding questions irrelevant to that issue at that time. As to limiting Nordholt's cross-examination related to alleged frivolous conduct, the trial court overruled appellees' motion for Civ.R. 11 sanctions and for frivolous conduct, denying appellees' request for over $30,000 in attorney's fees for the entire litigation. Any limitations placed upon the cross-examination related to this issue would not be relevant to this appeal as

frivolous conduct is no longer an issue. Therefore we cannot find that the trial court erred on this matter.

**{¶69}** In sum, appellants have not met their burden to establish that the trial court abused its discretion in determining that appellants' motion to compel was not substantially justified. We also find that the trial court's award for attorney's fees was not an abuse of discretion; however, the award of $1,275 for travel expenses was not supported by the record as there was absolutely no testimony related to the travel expenses. Therefore appellants' second assignment of error is overruled in part and sustained in part.

**{¶70}** For the foregoing reasons appellants' first assignment of error is deemed moot, their second assignment of error is overruled in part, and sustained in part to the limited extent that the award for travel expenses is not supported by the record.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and WILLAMOSKI, J.J., concur.**

**/jlr**