[Cite as *Poirier v. Tipp City Process Equip. Co.*, 2018-Ohio-1945.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RICK POIRIER | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 27697 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-2848 |
| | : | |
| PROCESS EQUIPMENT CO. OF TIPP CITY | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| *Defendant-Appellee* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of May, 2018.

. . . . . . . . . . .

WAYNE E. WAITE, Atty. Reg. No. 0008352, 4407 Walnut Street, Suite 210, Dayton, Ohio 45440
        Attorney for Plaintiff-Appellant

RICHARD A. TALDA, Atty. Reg. No. 0023395, and JENNIFER R. GREWE, Atty. Reg. No. 0092329, 33 West First Street, Suite 600, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on the appeal of Plaintiff-Appellant, Rick Poirier, from a summary judgment rendered in favor of Defendant-Appellee, Process Equipment Co. of Tipp City ("PECo"). In support of his appeal, Poirier contends that the trial court erred in striking his Civ.R. 41(A)(1) notice of dismissal without prejudice, which was filed after the trial court had granted summary judgment to PECo.

{¶ 2} We conclude that the trial court lacked jurisdiction over the case once Poirier filed a notice of dismissal under Civ.R. 41(A)(1). Although the trial court had issued a summary judgment decision in PECo's favor, the decision was interlocutory and was not a final order, because the issue of attorney fees had not been resolved and the trial court had not included a Civ.R. 54(B) certification in its decision. Since the decision was interlocutory, Poirier was able to file a notice of dismissal under Civ.R. 41(A)(1). Once the notice of dismissal was filed, the action was as if it had never been filed, and the trial court erred in striking Poirier's notice of dismissal. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 3} On June 8, 2016, Poirier filed a complaint against PECo for monetary damages and equitable relief, based on PECo's alleged breach of Poirier's manufacturer's representative agreement. The complaint alleged four causes of action against PECo: breach of contract; conversion of fees paid by Poirier's clients; violation of the statutory duty in R.C. 1335.11 when PECo failed to pay Poirier's commissions from 2013 to 2016; and unjust enrichment. As a remedy, Poirier asked to be paid

commissions in excess of $25,000, punitive damages, attorney fees, and any other relief the court deemed appropriate.

{¶ 4} The facts in the case were undisputed. According to the complaint, PECo and Poirier entered into a manufacturer's representative agreement in mid-August 2013. Under the agreement, which was attached to the complaint as Exhibit 1, PECo appointed Poirier to act as a non-exclusive or sales-specific sales representative for customers and prospective customers described in Ex. A (the Territory). The specified territory was Fanuc Robotics in Detroit, Michigan, and Spacex, in Los Angeles, California.

{¶ 5} Poirier was to be paid commission on all products sold within the Territory and was to be paid compensation based entirely on commission. Under the agreement, Poirier was to be paid commission on actual amounts that were collected within 30 days after PECo rendered an invoice to a customer and received payment. The commission schedule provided for a certain percentage of commission for each production purchase order, and further provided for spilt commissions. Concerning split commissions, the agreement stated that "[i]n the event that two or more representatives work in collaboration with PECo, commission will be spilt in accordance with the effort of the Representatives. PECo will make the determination of the level of activity shown by the representative." Complaint, Ex. C attached to Ex. 1, p. 2.

{¶ 6} The agreement also contained a termination clause, which provided that:

X. Termination. The Agreement shall take effect as of the day and year written above and shall continue in force until terminated as hereinafter provided. After the effective date of this Agreement, either party may terminate this Agreement with or without cause upon 30 days written notice

(hereafter referred to as the "Notice Period"), sent by certified mail, return receipt requested, to the other party. During said 30 day Notice Period, this Agreement shall continue in full force and effect in all respects and may not be shortened without the express written consent of both parties. In the event of termination, the Company shall also pay to the Representative "Post Termination Commissions" on orders received after the date of such written notice from quotations submitted to accounts located in the Representative's territory prior to termination. The Company will honor such orders for a period of 6 months after the date of written notice of termination. During such Post Termination Period, the Representative shall not directly or indirectly pursue or have contacts with any other firms that compete with the Company.

Complaint, Ex. 1, p. 3.

{¶ 7} Also attached to the complaint was a letter dated September 28, 2015, from PECo to Poirier. The letter indicated that PECo was terminating Poirier's representative agreement, which had previously been verbally terminated by Poirier and Richard Schafer in February 2015. The letter further indicated that PECo had not received any communication from Poirier relaying Poirier's representative activities with Fanuc on PECo's behalf in the past year. In addition, the letter stated that when PECo's CEO, Susan Springhetti, had questioned Poirier about his activity for 2014/2015, Poirier's expressed activity (one visit to Fanuc in one year) was inadequate. In the complaint, Poirier contended that after his termination, PECo had refused to pay him commissions that were due.

{¶ 8} On July 15, 2016, PECo filed its answer to the complaint, and it admitted that the documents attached to the complaint were true and accurate copies of the documents that were involved. PECo asserted various defenses, including that the complaint failed to state a claim, that the claims were barred due to Poirier's lack of performance and breach of agreement, by a lack of consideration, by lawful termination of the contract, by equitable doctrines of laches, estoppel, wavier, and unclean hands, and so forth. PECo, therefore, asked that the complaint be dismissed at Poirier's cost, and that it be awarded the costs of litigation, including reasonable attorney fees.

{¶ 9} In late December 2016, the trial court filed a final pretrial order, setting a final pretrial conference for April 13, 2017, and a bench trial for April 25, 2017. Shortly thereafter, on January 9, 2017, PECo filed a motion for summary judgment. The essence of the motion was that Poirier had breached the contract by doing nothing, and that he was not entitled to any commissions.

{¶ 10} The motion was supported by the affidavit of Springhetti, who indicated that she had met with Poirier in the fall of 2014 to discuss what activities Poirier had conducted on behalf of and to represent PECo. At that time, Poirier stated that the extent of his efforts was only one trip to Fanuc in 2014 with Richard Schaefer, PECo's sales representative. Springhetti then asked that Poirier send her notification of his trips, contacts made, communications, discussion topics, and the purpose of visits to, and contact with, PECo customers. However, after the fall 2014 meeting, Springhetti did not receive any information that she had requested, including evidence that Poirier was performing work for PECo. The only "sales" activities that Poirier had engaged in since entering the agreement in 2013 were two visits to Fanuc. During those visits, Poirier was

accompanied by Richard Schaefer, who led the meetings and did a majority of the communicating with the client. Springhetti stated that Poirier's "presence and participations at these meetings was minimal at best." PECo Motion for Summary Judgment, Ex. 1 (Affidavit of Susan Springhetti), p. 3. Springhetti further indicated that PECo had been damaged by Poirier's failure to perform and by paying him commissions, and that Poirier had not conferred any benefit on PECo.

{¶ 11} In addition, Springhetti stated that Poirier was notified in February 2015 that his agreement was being terminated due to his failure to perform. PECo sent a follow-up letter on September 28, 2015, confirming the February 2015 oral termination. According to Springhetti, PECo determined that Poirier had not shown the level of activity that the Agreement required for payment of commissions, as Poirier had not done any work or service to earn them. Springhetti further indicated that while PECo did not believe Poirier was entitled to any commissions due to his failure to comply with a material term of the agreement, i.e., perform work and services, PECo paid commissions to Poirier up through December 2014.

{¶ 12} Springhetti also included documents that Poirier had produced in response to PECo's request for production of documents. Specifically, PECo asked for any documents that would support Poirier's claim that he had conducted business activities on PECo's behalf, and that demonstrated his claim for damages. Poirier produced only nine pages of documents, which included: (1) what appears to be copies of seven payments totaling more than $30,000 that he had received from PECo between March 19, 2015, and June 24, 2015 (most of which were labeled "4th QTR Comm."); (2) a few emails between Poirier and a PECo employee, during one of which he mentioned that a

meeting with Spacex had gone well; and (3) minimal correspondence between Poirier and Springhetti in September 2015 regarding his termination.

{¶ 13} In responding to the summary judgment motion, Poirier did not file an affidavit or any materials other than what had been filed with his complaint. Poirier contended that the contract was not terminated until September 28, 2015, and that he was due commissions for six months after termination. However, he did not produce proof of any orders that he produced at any time during the agreement.

{¶ 14} On March 8, 2017, the trial court granted summary judgment in PECo's favor on all counts in the complaint. The court concluded that PECo had presented evidence that Poirier failed to perform under the contract and that Poirier did not refute this fact. The court further concluded that no conversion had occurred because Poirier failed to identify any commissions that had not been paid; in view of this fact, the issue of when Poirier was terminated was also irrelevant. As to the claim under R.C. 1335.11, the court found a lack of evidence that Poirier was due any commissions past December 2014. And finally, the court rejected Poirier's claim of unjust enrichment because Poirier had not conferred any benefit on PECo.

{¶ 15} In its decision, the court also set a non-oral hearing for March 21, 2017, at which time PECo was to submit evidence of reasonable attorney fees and costs due. Poirier was then given seven days thereafter to respond to any submission. The court noted that the decision was a final appealable order but the court did not include a Civ.R. 54(B) certification. In addition, the court noted that the decision had been electronically transmitted to the parties.

{¶ 16} On March 16, 2017, Poirier filed a notice of voluntary dismissal pursuant to

Civ.R. 41(A), and dismissed his claims against PECo, without prejudice.   Subsequently, on March 21, 2017, PECo submitted its request for attorney fees and costs totaling $14,662.28.   The same day, PECo filed a motion to strike Poirier's voluntary dismissal. The court then granted the motion to strike on March 27, 2017, and gave Poirier until March 31, 2017 to respond to PECo's attorney fee submission.

{¶ 17} On March 31, 2017, Poirier filed a response to the fee request, and also filed a motion asking the trial court to reconsider the ruling on the motion to strike.   Poirier then filed a notice of appeal from the March 8, 2017 entry granting summary judgment. On April 19, 2017, the trial court filed an order holding the motion for reconsideration and the attorney fee issue in abeyance pending appeal.

{¶ 18} On August 3, 2017, we dismissed Poirier's appeal for lack of a final appealable order, and remanded the case to the trial court.   Our decision was based on the fact that the trial court had contemplated further action on attorney fees and did not include a Civ.R. 54(B) certification.   *See Poirier v. Process Equipment Co. of Tipp City*, 2d Dist. Montgomery No. 27529, 2017-Ohio-8188, ¶ 6 (*Poirier I*).   After remand, the trial court filed an order on August 16, 2017, amending its decision of March 8, 2017, to add a Civ.R. 54(B) certification.   The same day, Poirier filed another Civ.R. 41(A) dismissal of his claims against PECo.   In addition, Poirier also filed a notice of appeal from the trial court's August 16, 2017 order and entry and from the court's March 27, 2017 decision, order, and entry sustaining PECo's motion to strike the notice of voluntary dismissal.

{¶ 19} During the course of the appeal, Poirier filed a "Notice for Determination of Final Appealable Order" in our court, asking that we issue a decision concerning whether the trial court's August 16, 2017 amended order and entry was a final appealable order

in light of the voluntary notice of dismissal that had been filed on March 16, 2017. We indicated that we would resolve this issue when we considered the merits of the appeal. *See Poirier v. Process Equipment Co. of Tipp City*, 2d Dist. Montgomery No. 27697 (Dec. 21, 2017) (*Poirier II*).

## II. Propriety of Order Striking Notice of Dismissal

{¶ 20} Poirier has not presented a statement of any assignments of error as required by App.R. 16(A)(3), but has simply made three points under the part of his brief that is labeled "Law and Analysis." While we are allowed to strike the brief or dismiss an appeal in such situations, we generally will decide to review the appellant's claims, in the interests of justice. *See, e.g.*, *VanHeulen v. VanHeulen*, 2d Dist. Greene No. 2015-CA-29, 2015-Ohio-4792, ¶ 11. Accordingly, we will do so here. From what we can glean from the discussion, Poirier's primary contention can be phrased as follows:

Because the Trial Court's Original Summary Judgment Order Was Not a Final Appealable Order, Poirier Had Authority to File a Notice of Voluntary Dismissal, and the Trial Court Erred in Striking the Notice of Dismissal.

{¶ 21} In essence, Poirier's argument is that because the trial court failed to include a Civ.R. 54(B) certification with the summary judgment ruling of March 8, 2017, the order was interlocutory and Poirier was entitled to file a voluntary notice of dismissal. Poirier further contends that the attorney fee award was not a collateral issue because it was based on the merits of the case, and that the trial court would be without jurisdiction to consider the amount of the award after the notice of dismissal was filed.

{¶ 22} As a preliminary point, we note that the fee award is not before us, as the trial court has not yet ruled on the fee request. That matter was held in abeyance pending the first appeal, and there is no indication in the docket that the trial court has rendered a decision on the point. Instead, the current appeal, as noted in Poirier's notice of appeal, is from the August 16, 2017 order amending the March 8, 2017 summary judgment decision to add a Civ.R. 54(B) certification, and from the March 27, 2017 order striking the notice of voluntary dismissal.

{¶ 23} The trial court's decision to strike the notice of voluntary dismissal cited *State ex rel. Engelhart v. Russo*, 131 Ohio St.3d 137, 2012-Ohio-47, 961 N.E.2d 1118, in which the Supreme Court of Ohio observed that "a notice of voluntary dismissal filed after the trial court enters summary judgment is of no force and effect and is a nullity." *Id.* at ¶ 17, citing *Blair v. Boye–Doe*, 157 Ohio App.3d 17, 2004-Ohio-1876, 808 N.E.2d 906, ¶ 3, fn. 2 (9th Dist.), and *Sutton v. Kim*, 11th Dist. Trumbull No. 2004-T-0061, 2005-Ohio-5866, ¶ 16.

{¶ 24} Poirier's brief does not discuss the *Engelhart* case. Instead, Poirier focuses on the argument that he has an absolute right to voluntarily terminate his action prior to actual commencement of trial, and that the lack of Civ.R. 54(B) language rendered the judgment interlocutory and subject to dismissal.

{¶ 25} The March 8, 2017 judgment was not a final appealable order because when the original pleadings ask for attorney fees, decisions that award attorney fees, but do not specify amounts, are not final appealable orders. *Poirier I*, 2d Dist. Montgomery No. 27529, 2017-Ohio-8188, at ¶ 4-6, citing *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879

N.E.2d 187, at paragraph two of the syllabus. (Other citations omitted.)

{¶ 26} In the case before us, PECo inserted a request for attorney fees in its answer, and could have asked for attorney fees as part of its motion for summary judgment. PECo also could have moved for fees after the court entered summary judgment on its behalf. *Vaughn at ¶* 2. PECo did not ask for fees in its summary judgment motion. Instead, the trial court determined that PECo was the prevailing party under R.C. 1335.11, and ordered a further non-oral hearing on fees. At that point, under *Vaughn*, the trial court was required to insert a Civ.R. 54(B) certification in the summary judgment decision before the decision could be considered a final appealable order. *Id.*

{¶ 27} In *Vaughn*, the Supreme Court of Ohio stressed that "[i]n the absence of express Civ.R. 54(B) language, an appellate court may not review an order disposing of fewer than all claims. * * * The trial court may revise the order until all claims are adjudicated. Civ.R. 54(B). A court may not bypass the requirement to include the express language of Civ.R. 54(B) simply by designating the order as final." *Vaughn* at ¶ 8.

{¶ 28} After *Vaughn* was decided, we noted the concern of other courts that an overly broad application would require dismissal of subsequent appeals for lack of a final appealable order even where requests for attorney fees had been only pro forma. (Citations omitted.) *Evanston Acquisitions, LLC v. STAG II Dayton, LLC*, 2d Dist. Montgomery No. 27480, 2017-Ohio-5755, ¶ 8. We commented that this reasoning would not apply in several situations, where an appeal would properly be dismissed for lack of a final appealable order under *Vaughn*. These included situations where the trial court discussed fees in its order or awarded fees and deferred determination of the amount of

the fees until later. The fear of overly broad application would also not be a concern where fees were requested under an express statute rather than being vague or unspecified requests. (Citations omitted.) *Id.* at ¶ 9.

{¶ 29} In the case before us, the trial court awarded fees, subject to further determination of the amount. This fell within the situations we discussed in *Evanston*, and the trial court's order, therefore, was clearly not a final appealable order under *Vaughn.* Consequently, when Poirier filed his Civ.R. 41(A) notice of dismissal, the trial court's order was still interlocutory.

{¶ 30} In pertinent part, Civ.R. 41(A)(1) allows a plaintiff "without order of court" to dismiss all claims against a defendant by "(a) filing a notice of dismissal at any time before commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant * * *." Since the court's decision was interlocutory, Poirier had the right under Civ.R. 41(A) to file a notice of dismissal.

{¶ 31} The Supreme Court of Ohio did say in *Engelhart* that "a notice of voluntary dismissal filed after the trial court enters summary judgment is of no force and effect and is a nullity." *Engelhart*, 131 Ohio St.3d 137, 2012-Ohio-47, 961 N.E.2d 1118, at ¶ 17, citing *Blair*, 157 Ohio App.3d 17, 2004-Ohio-1876, 808 N.E.2d 906, at ¶ 3, fn. 2, and *Sutton*, 11th Dist. Trumbull No. 2004–T–0061, 2005-Ohio-5866, at ¶ 16. However, this statement must be understood in its context.

{¶ 32} *Engelhart* involved a mandamus action in which the trial court had signed an entry granting summary judgment to the respondents. *Id.* at ¶ 2-3. However, before the clerk had a chance to file the trial court's order, petitioner's counsel became aware of

the court's intended action and filed a notice of dismissal. *Id.* at ¶ 3. As a result, even though the trial court had signed the entry granting summary judgment earlier, the petitioner's notice of dismissal was filed first. *Id.*

{¶ 33} Subsequently, the respondents moved the trial court to strike the notice of dismissal, and also moved the trial court to have the petitioner and her counsel show cause why they should not be held in contempt. *Id.* at ¶ 6. In response, the trial court filed an order striking the notice of dismissal and also imposed sanctions against the attorney. *Id.* at ¶ 6-9. After this occurred, the petitioner filed a complaint for a writ of prohibition in the court of appeals, seeking to prevent the trial court from further proceeding. The petitioner also sought a writ of mandamus to compel the trial court to vacate the order striking the notice of dismissal and to reinstate the notice. *Id.* at ¶ 10. After the court of appeals denied the writs, the petitioner appealed to the Supreme Court of Ohio.

{¶ 34} In responding to the petitioner's claims, the Supreme Court of Ohio first noted that " '[t]he plain import of Civ.R. 41(A)(1) is that once a plaintiff voluntarily dismisses all claims against a defendant, the court is divested of jurisdiction over those claims.' " *Id.* at ¶ 16, quoting *State ex rel. Fifth Third Mtge. Co. v. Russo*, 129 Ohio St.3d 250, 2011-Ohio-3177, 951 N.E.2d 414, ¶ 17. The court then noted the decision of the court of appeals, which had held that the notice of dismissal was ineffective because the petitioner had filed it after the trial court granted summary judgment. This is the context in which the Supreme Court of Ohio made the observation that the trial court and PECo have relied on – i.e., that a voluntary dismissal after summary judgment is a nullity. *Id.* at ¶ 17.

{¶ 35} The court went on to note that a notice of dismissal is effective if it is filed before journalization of a summary judgment. (Citations omitted.) *Id.* at ¶ 18. Due to the facts in the case, the court ultimately concluded that the notice of dismissal was effective because it was filed before the court's order was journalized. The court stressed that journalization is required for an order to be effective under Civ.R. 58. *Id.* at ¶ 21-25. Thus, the petitioner won the "race" in this case because her notice of dismissal was filed before the clerk filed the trial court's summary judgment decision.

{¶ 36} Because a "notice of voluntary dismissal is self-executing and completely terminates the possibility of further action on the merits of the case upon its mere filing, without the necessity of court intervention," the Supreme Court of Ohio held that the court of appeals had erred in denying the request for a writ of prohibition to prevent the trial court from proceeding on the merits of the case and in denying the writ of mandamus to compel the trial court to vacate its entry striking the notice of dismissal. *Id.* at ¶ 23 and 26.

{¶ 37} Notably, *Engelhart* and the cases it cited for the proposition about voluntary dismissals did not involve circumstances where a motion is granted but is not a final appealable order, either because a trial court fails to include a Civ.R. 54(B) certification or an attorney fee award is pending, or both. As was noted, the comment in *Engelhart* must be considered in its context. It cannot be construed as broadly as either the trial court or PECo believes.

{¶ 38} For example, in *Blair*, the plaintiff voluntarily dismissed her case after the trial court had already dismissed it due to the plaintiff's failure to provide an expert report. No attorney fees or other pending matters were involved, and the appeal actually involved

a subsequent denial of the plaintiff's motion for relief from judgment. *Blair*, 157 Ohio App.3d 17, 2004-Ohio-1876, 808 N.E.2d 906, at ¶ 3.

{¶ 39} Furthermore, the footnote in *Blair* that was cited by the Supreme Court of Ohio in *Engelhart* referred to a prior decision of the Ninth District Court of Appeals. *See Engelhart*, 131 Ohio St.3d 137, 2012-Ohio-47, 961 N.E.2d 1118, at ¶ 17, citing *Blair* at ¶ 3, fn. 2. This footnote in *Blair*, in turn, cites *Pearce v. Church Mut. Ins.*, 9th Dist. Medina No. 02CA0101-M, 2003-Ohio-3147, ¶ 15.

{¶ 40} *Pearce* involved a notice of dismissal that the plaintiff filed after the trial court had granted summary judgment for the defendant. The plaintiff later moved for relief from judgment, which the trial court granted. The trial court then vacated the summary judgment entry and dismissed the case without prejudice. *Id*. at ¶ 4-6.

{¶ 41} On appeal, the Ninth District Court of Appeals held that the plaintiff failed to present the trial court with operative facts to establish that the motion for relief from judgment should have been granted. The court, therefore, reversed the decision granting the motion for relief from judgment. In this regard, the court noted that summary judgment would be reinstated and the later-filed notice of dismissal was "of no force and effect." *Id*. at ¶ 15. Again, this was accurate, but it was in a different context – the case did not involve a situation where the trial court's decision was interlocutory or other matters remained pending.

{¶ 42} Likewise, *Sutton*, 11th Dist. Trumbull No. 2004-T-0061, 2005-Ohio-5866, involved a motion for relief from judgment, and does not appear to involve an interlocutory order.[1] The summary judgment order was based on the plaintiffs' failure to respond to

---

[1] In *Sutton*, one defendant, a doctor, filed a motion for summary judgment, which was

the defendant's motion for summary judgment, and the court of appeals ultimately held that the trial court did not err in denying the plaintiffs' subsequent motion for relief from judgment, because they failed to show excusable neglect. *Id.* at ¶ 15-16. In this context, the court rejected, among other things, the plaintiffs' contention of excusable neglect based on the fact that they mailed their notice of dismissal to the court rather than filing it in person before the summary judgment decision was filed. The court of appeals noted that the plaintiffs were aware of the deadline to respond to the summary judgment motion, and that "[a] notice of voluntary dismissal filed after the trial court enters summary judgment is a nullity." *Id.* at ¶ 16. Again, the context must be considered.

{¶ 43} The point is that none of these cases should be read as making a blanket statement about voluntary dismissal without considering the circumstances that were involved. Unlike *Engelhart*, *Blair*, *Pearce*, and *Sutton*, the summary judgment order in the case before us was interlocutory, and under Civ.R. 41(A)(1)(a), Poirier was permitted to file a notice of dismissal without the trial court's permission or intervention.

{¶ 44} The Supreme Court of Ohio has said that:

[O]nce a plaintiff voluntarily dismisses all claims against a defendant, the court is divested of jurisdiction over those claims. "It is axiomatic that such dismissal deprives the trial court of jurisdiction over the matter dismissed. After its voluntary dismissal, an action is treated as if it had never been

---

granted before the plaintiffs filed a notice of voluntary dismissal. There appears to have been another defendant, a hospital, but the decision of the court of appeals does not indicate what occurred with that defendant or whether the claims were still pending when the plaintiffs filed a notice of dismissal. In any event, the appeal was from denial of a motion for relief from judgment, not from the summary judgment decision. *Sutton*, 11th Dist. Trumbull No. 2004-T-0061, 2005-Ohio-5866, ¶ 1.

commenced." *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 464 N.E.2d 142. The notice of voluntary dismissal is self-executing and completely terminates the possibility of further action on the merits of the case upon its mere filing, without the necessity of court intervention.

(Citations omitted.) *Russo*, 129 Ohio St.3d 250, 2011-Ohio-3177, 951 N.E.2d 414, at ¶ 17.

**{¶ 45}** Thus, in the case before us, once Poirier filed the notice of dismissal, the action was terminated, and the trial court no longer had jurisdiction over the matter. As a result, the court's summary judgment order was of no further effect, and we have no ability to consider whether summary judgment in PECo's favor was properly granted. We do have the ability to consider, however, whether the trial court erred in striking Poirier's notice of dismissal. The trial court did err in striking the notice, because it no longer had the ability to do so.

**{¶ 46}** In responding to Poirier's arguments, PECo contends that the amount of fees to be granted was a collateral order that the court could still decide even if the case had been voluntarily dismissed. As support for this proposition, Poirier cites *ABN AMRO Mtge. Group, Inc. v. Evans*, 8th Dist. Cuyahoga No. 96120, 2011-Ohio-5654, and *Thallman v. Thallman*, 3d Dist. Seneca No. 13-15-36, 2016-Ohio-992. Both cases indicate that courts may still consider collateral issues that are unrelated to the merits of an action, even if a Civ.R. 41(A)(1) voluntary dismissal has divested the court of jurisdiction.

**{¶ 47}** The Supreme Court of Ohio has similarly held that despite dismissal of actions, trial courts are allowed to "consider collateral issues like criminal contempt and

Civ.R. 11 sanctions * * *." *State ex rel. Ahmed v. Costine*, 100 Ohio St.3d 36, 2003-Ohio-4776, 795 N.E.2d 672, ¶ 5 (involving involuntary dismissal for failure to state a claim). *See also State ex rel. Hummel v. Sadler*, 96 Ohio St.3d 84, 2002-Ohio-3605, 771 N.E.2d 853, ¶ 23 (noting that "despite a voluntary dismissal under Civ.R. 41(A)(1), a trial court may consider certain collateral issues not related to the merits of the action," including criminal contempt, Civ. R. 11 sanctions, and R.C. 2323.51 motions to impose sanctions for frivolous conduct).

{¶ 48} We have also held that collateral issues may be considered after voluntary dismissal of a case. *See State ex rel. J. Richard Gaier Co., L.P.A. v. Kessler*, 97 Ohio App.3d 782, 783, 647 N.E.2d 564 (2d Dist.1994) (trial court has jurisdiction to rule on Civ.R. 11 motion for sanctions following plaintiff's voluntary dismissal of underlying action under Civ.R. 41(A)(1)); *Miami Valley Hosp. v. Payson*, 2d Dist. Montgomery No. 18736, 2001 WL 1562103 (Dec. 7, 2001) (after voluntary dismissal, the trial court still had jurisdiction to decide motion for sanctions under 29 U.S.C. 1132(g)(1), "particularly where, as here, the motion was filed before the voluntary dismissal").

{¶ 49} Nonetheless, the matter of attorney fees is not before us, and we need not decide whether an award of fees under R.C. 1335.11 is a "collateral matter," or related to the merits, because the trial court has not yet awarded any specific fees. As was noted, the trial court held issues pertaining to attorney fees in abeyance during the prior appeal, and did not resolve the matter before Poirier filed the current appeal. If the trial court chooses not to award any fees, or decides it now lacks jurisdiction to do so, the matter of fees would be moot. The law is settled that appellate courts do not issue advisory opinions to trial courts. *Youngstown State Univ. v. State Emp. Relations Bd.*, 10th Dist.

Franklin No. 15AP-755, 2016-Ohio-2649, 49 N.E.3d 382, ¶ 11 (10th Dist.); *Broadnax v. Greene Credit Serv.*, 118 Ohio App.3d 881, 894, 694 N.E.2d 167 (2d Dist.1997).

**{¶ 50}** The other points raised by Poirier's brief pertain to matters already discussed, and need not be further considered. Accordingly, Poirier's assignment of error, however it is construed, is sustained. This also resolves Poirier's request that we decide whether the court's decision of August 16, 2017 is a final appealable order in light of Poirier's voluntary dismissal of the case. In this regard, we note that the trial court's August 16, 2017 order was filed in response to our specific direction, and the trial court had also previously filed an order striking Poirier's notice of dismissal. Poirier appealed both of these orders, and we have jurisdiction to consider whether the trial court erred in striking the voluntary notice of dismissal, even though we do not have the ability to consider whether summary judgment was property rendered in PECo's favor.

**{¶ 51}** Based on the preceding discussion, we conclude that the trial court erred in striking Poirier's notice of dismissal. Accordingly, Poirier's assignment of error is sustained.

## III. Conclusion

**{¶ 52}** Poirier's assignment of error having been sustained, the judgment of the trial court striking Poirier's notice of dismissal is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J., concurring.

HALL, J., dissenting,

{¶ 53} In my opinion, the question before us is whether the filing of a Civ. R. 41(A) notice of dismissal after the trial court has granted summary judgment and determined that PECo is statutorily entitled to attorney fees prevents the trial court from proceeding to determine the amount of those attorney fees. I conclude that whether or not plaintiff attempted to dismiss his claim by filing a Civ. R. 41(A) notice of dismissal is irrelevant; the amount of attorney fees due is a collateral matter, and the trial court can proceed to determine the amount of fees due. Accordingly, I would not reverse the trial court's order striking Poirier's notice of dismissal and therefore I dissent.

{¶ 54} We decided a similar case in *Miami Valley Hosp. v. Payson*, 2d Dist. Montgomery No. 17830, 1999 WL 1207064 (Dec. 17, 1999) (*Payson I*). There the hospital brought an action on a patient account. The defendants, as third-party plaintiffs, filed third-party claims against their health insurers. One insurer, Guardian Life Insurance Company, filed a motion to dismiss the third-party action and sought attorney fees under ERISA. Later, the Paysons filed a Civ.R. 41(A) dismissal of their third-party complaint. The trial court then referred the attorney-fee issue to a magistrate. The Paysons filed in this court for a writ of prohibition to prevent the trial court from proceeding to decide the attorney fees because the third-party claims had been dismissed. We said:

In *State ex rel. Gaier Co. v. Kessler* (1994), 97 Ohio App.3d 782, 784-785, 647 N.E.2d 564, we stated that "[a] voluntary dismissal under Civ.R. 41(A)(1) deprives the trial court of jurisdiction over the matter dismissed. * * * However, a request for sanctions under Civ.R. 11 is not part of the matter dismissed; it is a demand for relief that is collateral to the

claims of the parties and the adjudication of those claims." (Citations omitted). Accordingly, we held "that the filing of a voluntary dismissal does not divest the trial court of jurisdiction over a motion for sanctions so long as that motion does not seek to penalize a party for exercising his absolute right to dismiss an action." *Id.,* at 785, 647 N.E.2d 564; *see also Grossman v. Mathless & Mathless, C.P.A.* (1993), 85 Ohio App.3d 525, 620 N.E.2d 160; *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (holding that under federal law, a voluntary Rule 41(a)(1)(i) dismissal does not deprive a district court of jurisdiction over a federal Rule 11 motion).

It is apparent from the foregoing that a trial court has jurisdiction to hear a claim for attorney fees based upon alleged violations of Civ. R. 11 or R.C. 2323.51 even after the underlying action giving rise to the claim for attorney fees has been voluntarily dismissed. It is also apparent that a state trial court has jurisdiction to entertain an ERISA-based claim for attorney fees. We are not persuaded that a voluntary dismissal of an action deprives a trial court of its jurisdiction to hear a claim for attorney fees simply because the basis of that claim is found in the ERISA statute, rather than in Civ. R. 11 or R.C. 2323.51. Despite the unsupported contention of the petitioners to the contrary, a claim for attorney fees remains collateral to the main action, regardless of the statute or rule that authorizes the prosecution of such a claim. In short, the argument of the petitioners fails to distinguish between the collateral nature of an attorney fees claim and the basis for

bringing that claim.

*Id.* at *3-4.

{¶ 55} In a subsequent appeal, after Mr. Payson was ordered by the trial court to pay attorney fees of $8,683.88 to the insurance company, we addressed that ruling. In *Miami Valley Hosp. v. Payson,* 2d. Dist. Montgomery No. 18736, 2001-Ohio-1926 (*Payson II*), we affirmed the attorney-fee award made pursuant to the ERISA provision even though the Civ.R. 41(A) dismissal had been filed before assessment of attorney fees. In my opinion, that decision then got sidetracked in a dicta discussion of whether it is necessary for the recipient of such an award to be a "prevailing party." Eventually we determined that a prevailing party is unnecessary for the ERISA attorney-fee award. But the holding of *Payson II* is that statutory attorney fees could be awarded to the opposite party despite an intervening Civ.R. 41(A) dismissal.

{¶ 56} Thereafter, the Tenth District quoted from the "prevailing party" dicta in *Payson II* to conclude that there was no "prevailing party" after a Civ.R. 41(A) dismissal in *Winona Holdings, Inc. v. Duffey,* 10th Dist. Franklin No. 13AP-471, 2014-Ohio-519, ¶ 9. There the plaintiff sold a car to the defendant, who presented a later-dishonored check. The dealer sued the defendant under R.C. 2307.60, which allows recovery for a person injured by certain criminal acts. For a theft offense, which under some circumstances includes a dishonored check, R.C. 2307.61(B) provides that "if the defendant prevails in the civil action" the defendant may recover attorney fees, costs, and compensatory damages. The dealer had acquired a default judgment, and the defendant was denied a Civ. R. 60(B) motion but that was reversed and remanded to the trial court in an earlier appeal. Upon remand, with no form of judgment in effect, the plaintiff filed a Civ.R. 41(A)

dismissal. Only thereafter did the defendant file for attorney fees as the prevailing party. The trial court determined he did not prevail because the case was dismissed. The court of appeals agreed there was no prevailing party, but in my opinion that was because there was no form of judgment in effect.

{¶ 57} But even if *Winona Holdings* were not in part based on the *Payson II* dicta, I would distinguish it from the case here because PECo was the prevailing party when the Civ.R. 41(A) dismissal was filed, the request for attorney fees already had been made, and had been determined, and all that remained was to determine the amount.

{¶ 58} I would follow the rationale of *Payson I* that "a claim for attorney fees remains collateral to the main action, regardless of the statute or rule that authorizes the prosecution of such a claim." To determine otherwise allows a plaintiff to test the waters and when summary judgment is entered against him, to thwart the statutory rights of the opposition. In essence, the trial court had ruled that PECo is entitled to attorney fees. Allowing a Civ.R. 41(A) dismissal to extinguish PECo's statutory claim to attorney fees that already had been awarded, although in an undetermined amount, allows Poirier to control the opposition's claim, not just his own. In that regard, I view an already-awarded claim for attorney fees as similar to a counterclaim, which is not subject to dismissal by the opposition under Civ.R. 41(A).

{¶ 59} I would overrule the assignment of error and remand the case for determination of the attorney fees due to PECo.

Copies mailed to:

Wayne E. Waite
Richard A. Talda
Jennifer R. Grewe
Hon. Michael W. Krumholtz